IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FERRER INTERNACIONAL S.A., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | Original Filing Date: July 10, 2024 |
| v. | ) | Redacted Filing Date: July 17, 2024 |
| | ) | |
| VERGE ANALYTICS INC. d/b/a VERGE | ) | C.A. No. 24-694 UNA |
| GENOMICS, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## ANSWER AND COUNTERCLAIMS

Verge Analytics, Inc. d/b/a Verge Genomics ("**Verge**") files its Answer and Counterclaims in response to the Complaint filed by Ferrer Internacional, S.A. ("**Ferrer**") as follows:

1.    Verge denies Ferrer is entitled to rescind the Co-Development and License Agreement executed by Verge and Ferrer on March 18, 2024 (the "**CDLA**"). Verge denies any allegation or inference that Verge intentionally concealed any material facts from Ferrer at any time. Verge avers that Verge and Ferrer conducted a diligence process while negotiating the contractual terms of the CDLA during which Ferrer sought a regional co-development license outside North America, and Verge responded to all questions posed by Ferrer and provided access to a virtual data room with all documents requested by Ferrer. The remaining allegations are denied.

2.    The first sentence of Paragraph 2 is denied.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ The remaining allegations are denied.

3.      ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ The remaining allegations are denied.

4.      Verge denies the first sentence of Paragraph 4. Verge avers that all of the underlying research data ██████████████████████████████████████████ was disclosed and provided to Ferrer before execution of the CDLA, and the CDLA attached and incorporated a Clinical Development Plan ████████████████████████████████████████. To the extent Ferrer alleges ███████ were "material information," Verge avers that ██████████ ████████ until after the CDLA was executed. Verge admits that Verge directed a Verge team member to upload and share with Ferrer ████████████████ through the parties' common research portal along with ███████████████████████████ which information and documents Ferrer requested for the first time after executing the CDLA and after ██████████. To the extent Paragraph 4 implies that Verge unintentionally disclosed ████████████████████ to Ferrer, those allegations are denied. Verge denies any allegation or inference that Verge

intentionally concealed any material facts from Ferrer at any time. The remaining allegations are denied.

5.     ███████████████████████████████ Verge denies any allegation or inference that Verge intentionally concealed any material facts from Ferrer at any time. The remaining allegations are denied.

6.     ███████████████████████████████ Verge denies any allegation or inference that Verge intentionally concealed any material facts from Ferrer at any time. Verge avers that all of the underlying research data ████████████████████████████████ ████████████ was disclosed and provided to Ferrer before execution of the CDLA, and the CDLA attached and incorporated a Clinical Development Plan ████████████████████████ ████████████████████████ The remaining allegations are denied.

7.     Verge denies the first sentence of Paragraph 7. Verge denies that it "refused" to ████████████████████████ or "refused" to answer Ferrer's questions or to provide information Ferrer requested. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████ Verge further avers that Ferrer's request ████████████████ was not supported by the independent Data Monitoring Committee or by independent experts. Verge denies any allegation or inference that Verge intentionally concealed any material facts from Ferrer at any time. The remaining allegations are denied.

8.     Verge admits that Ferrer's litigation counsel sent a letter purporting to rescind the CDLA, but Verge denies Ferrer was entitled to rescission and denies that the notice was provided on May 30, 2024. The letter, which Ferrer attached as Exhibit 2 to its Complaint, was

dated May 31, 2024. Verge denies any allegation or inference that Verge intentionally concealed any material facts from Ferrer at any time. The remaining allegations are denied.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The remaining allegations are denied.

17.     ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ The remaining allegations are denied.

18.    The first sentence of Paragraph 18 is admitted. The second sentence is admitted because there were no SAEs or dose-limiting toxicities as part of Study VGCS-50635-001 (the "**001 Study**"). ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████ Verge avers that all of the underlying research data █████████████████████████████████████ was disclosed and provided to Ferrer before execution of the CDLA, and the CDLA attached and incorporated a Clinical Development Plan, ████████████████████████████████

████████████ The remaining allegations are denied.

19.    The first sentence of Paragraph 19 is admitted. The second sentence is denied. Verge avers that the 002 Study was ongoing in Europe and Canada when the 003 Study began.

20.    ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████ The remaining allegations are denied.

21.    Paragraph 21 is admitted except to the extent Ferrer refers to a "BIU-Europe" convention. The convention was "BIO-Europe."

22.    Admitted.

23.    Verge admits that it emailed Ferrer on January 22, 2024, ██████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████ The

remaining allegations are denied.

24.    Verge admits that ████████████ Verge met with Ferrer's representatives █

████████ on February 23, 2024. Verge denies any allegation or inference that Verge

intentionally concealed any material information during the meeting. Verge avers the purpose and

objective of the meeting was ████████████ to educate Ferrer's representatives on the Clinical

Development Plan for the 002 Study, part of which was being conducted in Ferrer's "Territory" as

defined in the CDLA. Verge avers that Ferrer did not request any information or ████████████

████████████████████ during the meeting. The remaining allegations are denied.

25.    Verge admits that the parties' senior leadership met in a face-to-face meeting in

Boston on February 6, 2024. The second sentence of Paragraph 25 is admitted. Verge denies any

allegation or inference that Verge intentionally concealed any material information during the

meeting. Verge avers the purpose and objective of the meeting was to agree and finalize the

Clinical Development Plan to append to the CDLA. ████████████████████████

██████████████████████████████████████████████████████████████████████

███ Verge avers that Ferrer did not request any information or ████████████████████

████████████ during the meeting. The remaining allegations are denied.

26.    Verge admits that it emailed Ferrer on March 5, 2024, with an update on European

regulatory approvals because Ferrer specifically requested an update on European regulatory

approvals. ███████████████████████████████████████

███████████████████████████ Verge denies the allegation that it "did not inform" and "did not mention" ███████████████████████ to Ferrer, as ████████████████████████ was not encompassed by any request Ferrer made. Verge denies any allegation or inference that Verge intentionally concealed any material information.

27.    Admitted.

28.    The first sentence of Paragraph 28 is admitted to the extent the Clinical Development Plan was variously referred to as "Exhibit 3" or "Appendix 3" in the CDLA. ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ Verge denies any allegation or inference that Verge intentionally concealed any material information.

29.    The first sentence of Paragraph 29 is admitted. The second sentence is admitted to the extent it confirms that Ferrer did not request information or documents that would encompass ███████████████████████ but rather had an unstated "expectation" about what it should receive. Verge denies any allegation or inference that Verge intentionally concealed any material information.

30. Denied. Verge avers that Verge directed a Verge team member to upload and share with Ferrer ████████████████████ through the parties' common research portal along with ██████ ██████████████████████████████ which information Ferrer requested for the first time after executing the CDLA and after ██████████. Verge denies any allegation or inference that Verge intentionally concealed any material information.

31. Denied to the extent Paragraph 31 suggests or implies ██████████ occurred before the CDLA was executed. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

32. The first sentence of Paragraph 32 is admitted. The second sentence is denied.

33. The first sentence of Paragraph 33 is denied. Verge avers that it provided a hypothesis explaining ████████████████████████████████████████████ ████████████ It is admitted Ferrer did not accept Verge's hypothesis. It is admitted Ferrer sent a follow up email with a variety of questions. The remaining allegations are denied.

34. The first sentence of Paragraph 34 is admitted. It is admitted that Verge made a proposal ████████████████████████████ during the April 16, 2024, meeting, and Verge avers that its proposal was supported by the independent Data Monitoring Committee and independent experts. It is admitted Ferrer rejected Verge's proposal and asked to pause and reassess all clinical testing, including the 002 Study. The remaining allegations are denied.

35. Verge admits that Ferrer sent Verge a letter on April 16, 2024, and demanded ██

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████ Verge admits that it did not accept Ferrer's demands because, among other reasons, the independent Data Monitoring Committee and independent experts did not support Ferrer's position. ███████████ ████████████████████████████ Verge denies any allegation or inference that Verge intentionally concealed any material information. The remaining allegations are denied.

36. Verge admits the Joint Steering Committee met on April 18, 2024. Verge admits that Ferrer proposed material alterations to the Clinical Development Plan, and Verge avers that the independent Data Monitoring Committee and independent experts did not support Ferrer's proposals. Verge avers that its proposed changes were supported and recommended by the independent Data Monitoring Committee and independent experts. The remaining allegations are denied.

37. The first sentence of Paragraph 37 is admitted. Verge avers that it provided a hypothesis explaining ███████████████████████████████████████ ███████ The remaining allegations are denied.

38. The first sentence of Paragraph 38 is admitted. The second sentence is denied in that Ferrer demanded ████████████████████████████████████████ ███████████ The remaining allegations are admitted.

39. ████████████████████████████████████████████████ ████████████████████████████ Verge denies that it "did not provide the requested information." Verge avers that it populated a comprehensive data room ████████████ included Ferrer personnel in all clinical development team meetings, meetings of the Data Monitoring Committee, and Chemistry Manufacturing and Controls meetings; and expediently

provided extensive information to Ferrer as requested. Verge denies any allegation or inference that Verge intentionally concealed any material information. The remaining allegations are denied.

40.     To the extent Paragraph 40 implies that Verge unintentionally disclosed ███████ ███████████████ to Ferrer, those allegations are denied. Verge avers that Verge directed a Verge team member to upload and share with Ferrer ███████████████████████ through the parties' common research portal along with █████████████████████████████████████ which information and documents Ferrer requested for the first time after executing the CDLA and after ████████ Verge denies any allegation or inference that Verge intentionally concealed any material information. The remaining allegations are denied.

41.     The first sentence of Paragraph 41 is denied. Verge admits that Ferrer began requesting the information and documents reflected in the second sentence of Paragraph 41 for the first time after ███████, but Verge denies that Ferrer expressed concerns about the viability of the CDLA or █████████████████████████████████████ ███████████████████ Verge denies that it "failed and refused to provide the requested information to Plaintiff." Verge avers that it populated a comprehensive data room ████████ ██████ included Ferrer personnel in all clinical development team meetings, meetings of the Data Monitoring Committee, and Chemistry Manufacturing and Controls meetings; and expediently provided extensive information to Ferrer as requested. Verge denies any allegation or inference that Verge intentionally concealed any material information. The remaining allegations are denied.

42.     Denied.

43.     The first sentence of Paragraph 43 is denied. Verge admits that Ferrer's litigation counsel sent a letter purporting to rescind the CDLA, but Verge denies Ferrer was entitled to rescission and denies that the notice was provided on May 30, 2024. The letter, which Ferrer

attached as Exhibit 2 to its Complaint, was dated May 31, 2024. The remaining allegations are denied.

44.     Verge incorporates by reference its responses to the preceding paragraphs as if restated fully herein.

45.     The first sentence of Paragraph 45 is admitted. The second and third sentences are denied as stated. The fourth sentence is admitted. It is admitted that Ferrer attached a copy of the CDLA as Exhibit 1 to the Complaint, but the copy Ferrer attached did not include the CDLA's "Exhibits" or "Appendices," including the Clinical Development Plan.

46.     The allegations of Paragraph 46 are denied as stated.

47.     Verge admits that Verge directed a Verge team member to upload and share with Ferrer ███████████████████ through the parties' common research portal along with ████ ███████████████████████████ which information and documents Ferrer requested for the first time after executing the CDLA and after ██████████. To the extent Paragraph 47 implies that Verge unintentionally disclosed ████████████████ with Ferrer, those allegations are denied. Verge denies any allegation or inference that Verge intentionally concealed any material information. Verge avers that all of the underlying research data ██████████████████ ██████████████████████ was disclosed and provided to Ferrer before execution of the CDLA, and the CDLA attached and incorporated a Clinical Development Plan███████████ ████████████████████████████ The remaining allegations are denied.

48.     Denied.

49.     The first sentence of Paragraph 49 is denied. Verge does not have sufficient knowledge or information to admit or deny the second sentence of Paragraph 49 and, therefore, it is denied.

50.     Denied.

51.     Denied.

52.     Verge denies any allegation or inference that Verge intentionally concealed any material information. Verge does not have sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 52 and, therefore, they are denied.

53.     Denied.

## **AFFIRMATIVE DEFENSES**

Verge states the following defenses and reserves its right to assert other and additional defenses and claims not asserted herein of which it becomes aware through discovery or other investigation as may be appropriate at a later time. In asserting these defenses, Verge does not assume any burden of proof, persuasion, or production with respect to any issue where the applicable law places the burden upon Ferrer. Verge expressly reserves the right to supplement and/or amend its Answer.

1.      The Complaint fails to state a claim for which relief may be granted as to Ferrer, and Ferrer's claims should be dismissed with prejudice.

2.      Ferrer has not sustained any damages because of the acts and omissions alleged in the Complaint, and Ferrer's claims should be dismissed with prejudice.

3.      Ferrer's claims are barred because Ferrer first materially breached the CDLA and repudiated its obligations under the CDLA.

4.      Ferrer is not entitled to rescission of the CDLA because Verge did not intentionally conceal any material information from Ferrer and had no legal obligation to disclose the information on which Ferrer founds its Complaint.

5.      Ferrer's claim should be barred by the doctrine of unclean hands.

## COUNTERCLAIMS

Verge Analytics, Inc. d/b/a Verge Genomics ("**Verge**"), now having fully answered, asserts the following Counterclaims against Ferrer Internacional, S.A. ("**Ferrer**") and alleges as follows:

## NATURE OF THE ACTION

1.      Ferrer filed suit against Verge seeking this Court's blessing in its attempt to run away from its contractual commitments—including multi-million-Euro financial obligations—by claiming it is entitled to rescind the Co-Development and License Agreement executed by Verge and Ferrer on March 18, 2024 (the "**CDLA**").

2.      Ferrer concocted its rescission arguments only after it unsuccessfully attempted to strongarm Verge into giving up rights retained by and granted to Verge under the CDLA.

3.      Specifically, Ferrer withheld a Fifteen Million Euro (€15,000,000.00) payment Ferrer was contractually obligated to pay upon execution of the CDLA.

4.      Ferrer used its withholding of that payment—along with other multi-million-Euro payment obligations it refused and failed to pay—while attempting to extract concessions from Verge that Ferrer had not bargained for and to alter the parties' agreement.

5.      Ferrer's unreasonable and misguided demands flew in the face of the recommendations of multiple independent outside clinicians, scientists, and experts, including the independent Data Monitoring Committee, which was charged with overseeing the clinical trials to ensure vigilant and compliant conduct of the trial and the safety of all subjects.

6.      When Verge refused to bow to Ferrer and demanded payment of the by-then overdue payments, Ferrer sent a notice purporting to "rescind" the CDLA premised on the false notion that Verge concealed "material information" from Ferrer before and after the parties signed the CDLA.

7.      Ferrer has no legal or factual basis for rescission of the CDLA.

8.      Verge did not materially misrepresent or conceal any material facts from Ferrer at any time.

9.      Ferrer materially breached the CDLA, and Verge is entitled to recover all amounts due and owing under the CDLA, along with interest and its attorneys' fees.

## PARTIES

10.      Verge is a clinical-stage biotechnology company focused on developing therapeutics for complex diseases with high unmet need using human genomics from patient disease tissues and machine learning. Verge is incorporated in Delaware with its registered office at 131 Oyster Point Blvd., Suite 300, South San Francisco, California 94080.

11.      Ferrer manufactures and markets pharmaceuticals and chemical products. Ferrer is a company registered in Spain having its registered office at Av. Diagonal, 549, 5th floor, 08029, Barcelona, Spain.

## JURISDICTION

12.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.      Personal jurisdiction exists over Ferrer pursuant to Section 20.3 of the CDLA.

14.      Venue is proper in this Court pursuant to Section 20.3 of the CDLA and pursuant to 28 U.S.C. § 1391(c)(2) and (3).

**FACTUAL BACKGROUND**

I.   **Verge developed a breakthrough pharmaceutical product, VRG50635, which has the potential to treat Amyotrophic Lateral Sclerosis.**

15.   Verge developed and is the sole and full owner of certain patents, technology, know-how, and other intellectual property rights relating to a compound known and identified as VRG50635 (the "**Product**")—Verge's principal drug candidate for the treatment of sporadic and familial forms of Amyotrophic Lateral Sclerosis ("**ALS**").

16.   ALS, the most common motor neuron disease, is a progressive neurodegenerative disease of motor neurons in the brain and spinal cord, resulting in progressive paralysis, with death typically within 2 to 5 years of diagnosis.

17.   ALS is a rare disease with multifactorial etiology, and the precise pathogenic mechanism is still unknown.

18.   The Product is a potential best-in-class small molecule inhibitor of PIKfyve, a therapeutic target for ALS discovered from diseased human tissues.

19.   The Product is also a potent, orally bioavailable PIKfyve inhibitor that could improve survival in ALS patient neurons and has shown efficacy in multiple preclinical studies in ALS-relevant models of motor neuron degeneration.

20.   Currently, the Product is undergoing a study in Canada and several European Countries in which ALS patients are receiving doses of therapeutics containing the Product (the "**002 Study**").

21.   The 002 Study, which has been applauded for its cutting-edge design, incorporates innovative technology that makes it possible to collect dense amounts of unbiased, objective disease-relevant data to properly assess safety, tolerability, pharmacological dose-response, and potential efficacy, including for disease modification, early in clinical development.

**II.   Ferrer and Verge began negotiations to enter into a partnership and agreement to develop and commercialize the Product.**

22.   In the fall of 2023, Verge and Ferrer began discussions regarding a partnership and strategic collaboration to co-develop pharmaceutical products that contain the Product.

23.   Verge sought and was negotiating for the right to co-develop and commercialize the Product in European Economic Area (EEA), United Kingdom, Switzerland, geographically Central and South America (including, for the avoidance of doubt, Mexico, Belize, Costa Rica, El Salvador, Guatemala, Honduras, Mexico, Nicaragua, Panama, South America, Argentina, Bolivia, Brazil, Chile, Colombia, Ecuador, Guyana, Paraguay, Peru, Suriname, Uruguay, Venezuela), Brunei Darussalam, Cambodia, Indonesia, Laos, Malaysia, Myanmar (Burma), Philippines, Singapore, Timor-Leste, Thailand, Vietnam and Japan (the "**Territory**").

24.   At no time did Ferrer seek development or commercialization rights in the United States or Canada.

25.   Instead, Verge informed, disclosed, and made it clear to Ferrer that Verge intended to retain rights to develop and commercialize the Product in the United States and Canada, and that it would retain responsibility for regulatory approvals in those regions and outside the Territory.

26.   Before the parties executed the CDLA, Verge and Ferrer conducted a diligence process whereby Verge provided Ferrer with access to a virtual data room which Verge had populated with information and documents relating to the Product.

27.   During the diligence process, Ferrer submitted follow up questions and requests for information to Verge, and Verge responded to all of Ferrer's questions and provided all information and documents Ferrer requested.

28.    At no time—during the diligence process or otherwise—did Verge intentionally conceal, omit, misrepresent, or misconstrue any material fact relating to the Product.

29.    Verge also did not withhold any information or documents which Ferrer requested.

30.    Although Ferrer requested ███████████████████████████ Ferrer did not submit any request to Verge seeking all information, documentation, and correspondence from or relating ████████████████████████████ ████████████████████████████

31.    ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ██████████████

32.    ████████████████████████████ ██████████████████████████

33.    ████████████████████████████ ███████████████████████████

34.    ████████████████████████████ ████████████████████

35.    Verge informed Ferrer that it had submitted ████████████████ ████████████████████████

36.    Verge did not represent to Ferrer that it had submitted a request with ███████████ ████████████████████████████ ██████████████

37.     In fact, at all times, Ferrer was aware of ██████████████████

████████████████████████████████████████████

38.     Ferrer also knew that ███████████████████████████████.

39.     Verge never represented or claimed to Ferrer that █████████████

████████████████████████████

40.     As part of the ongoing due diligence, Verge provided to Ferrer all of the same underlying data and information ██████████████████████, including toxicology data from its earlier nonclinical study involving laboratory animals and data from Verge's first clinical study in humans, Study VGCS-50635-001 (the "**001 Study**").

41.     ███████████████████████████████████████

████████████████████████████

42.     ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████

43.     ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

44.     ███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

45. ███████████████████████████████████████████

████████████████████████████████████

46. ███████████████████████████████████████████

███████████████

47. Although Verge disclosed to Ferrer ████████████████████████████████ Ferrer did not at any time request any additional information or documents relating to ████████ ███████████████████████

48. Instead, Ferrer's discussions and meetings with Verge and its document requests focused on the 002 Study and ████████████████

49. Ferrer did not submit any request to Verge that sought ████████████ ███████████████████████

50. Before executing the CDLA, Ferrer knew that it had not submitted any request to Verge seeking ████████████████████████████████████████████ ███████████████████████████████████████

51. ███████████████████████ was not material to the parties or to the execution of the CDLA.

### III. Verge and Ferrer executed the CDLA, which obligated Ferrer to make a Fifteen Million Euro (€15,000,000.00) payment along with other multi-million-Euro obligations.

52. On March 18, 2024, Verge and Ferrer executed the CDLA, which granted Ferrer exclusive rights to co-develop and commercialize the Product in the Territory. Consistent with the pre-execution negotiation, the CDLA defined the scope of the Territory in which Ferrer had obtained development and commercialization rights.

53. Meanwhile, under the CDLA, Verge maintained development and commercialization rights in the United States, Canada, and other regions and countries outside Ferrer's defined Territory.

54. The CDLA attached and incorporated a Clinical Development Plan, ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

55. As partial consideration for Verge granting rights and licenses to Ferrer, under Section 9.1 of the CDLA, Ferrer was obligated to pay or cause to be paid a one-time, non-refundable fee of Fifteen Million Euro (the "**Upfront Payment**") within thirty (30) Business Days after March 18, 2024, and subject to the receipt of invoice from Verge.

56. As further consideration, Ferrer also agreed to pay Verge thirty percent (30%) of the Development Costs already incurred by Verge, which costs were disclosed and set forth in the CDLA. That additional payment was also due within thirty (30) Business Days after March 18, 2024, and subject to the receipt of an invoice from Verge.

57. As required, Verge supplied, and Ferrer received, invoices reflecting the due and owing Upfront Payment and Ferrer's thirty percent obligation for Verge's incurred Development Costs.

**IV.** **After execution of the CDLA, ████████████████████████████**
████████████████████████████████

58. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████

59. ███████████████████████████████████████

████████████████████████████████████████

60. ███████████████████████████████████████

███████████████████████████████

61. ███████████████████████████████

62. ███████████████████████████████████████

███████████████████████████████

63. ███████████████████████████████████████

████████████████████████████████████

64. ███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

65. ███████████████████████████████████████

████████████████████████████████████

**V.** **Following** ████████████████████████ **Ferrer refused and failed to make the required payments and inundated Verge with first-time document and information requests.**

66. Following ███████████████ Ferrer refused and failed to make the required Upfront Payment.

67. Instead, Ferrer made numerous demands to Verge, including that ██████████ ████████████████████████████████

68. ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

69. Ferrer's ██████████████ would have constituted a material change to the Clinical Development Plan pursuant to Section 1.46 of the CDLA.

70. Ferrer's ████████████████ also would have been devastating to ██████████ ████████ and would have been detrimental to the CDLA and the parties' partnership.

71. The independent Data Monitoring Committee and other independent outside clinicians, scientists, and experts did not support Ferrer's ████████████████████████

72. When Verge did not immediately accede to Ferrer's demand, Ferrer began to inundate Verge with requests for information and documents, none of which Ferrer had not submitted previously to Verge.

73. For the first time Ferrer requested ████████████████████████████ ████████████████████████████████

74. Ferrer's requests amounted to a tacit acknowledgement that it had not requested ██ ████████████████████████████████████████

75.    Ferrer knew that it had not requested ████████████████████████████ ████████████████████████████████.

76.    After Ferrer made its first-time requests, Verge directed a Verge team member to upload to the parties' common research portal all ████████████████████████████ ██████████████████████████.

77.    Although Verge disclosed ██████████████████████ to Verge weeks earlier, until May 31, 2024, Ferrer expressed no concern about ████████████████████.

78.    Instead, Ferrer continued to demand ██████████████████████ and continued to make document and information requests, all of which Verge worked diligently respond to. Verge also complied with the provisions of the CDLA governing disputes among the parties, which included convening a meeting of the companies' Chief Executive Officers and a meeting of the Joint Steering Committee the parties created through the CDLA.

79.    Despite all of Verge's good faith efforts, Ferrer refused and failed to make the required payments.

## VI.    Ferrer sent a letter purporting to rescind the CDLA.

80.    On May 31, 2024, Ferrer's litigation counsel sent a letter (the "**Rescission Notice**") purporting to rescind the CDLA.

81.    The Rescission Notice was premised on the false notion that Verge concealed "material information" from Ferrer before and after the parties signed the CDLA.

82.    Specifically, Ferrer falsely claimed that ██████████████████████ was material information despite the fact that (1) Ferrer did not specifically request ████████████ ████████████████████████████████████████████████████████ (2) Ferrer had in its possession all of the underlying data ████████████████████████████

███████████████████████ (3) ████████████████████████████████

████████████████████████████ (4) Ferrer knew ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ ; and (5) the Clinical Development Plan in the CDLA

reflected ███████████████████████████████████████████████████████████

████████████████████████████████████████

83.     Conspicuously absent from the Rescission Notice was any document or exhibit showing that Ferrer had, in fact, requested the information on which it relied for rescission.

84.     Ferrer's theory of concealment fails because, among many other reasons, Verge disclosed the very information which Ferrer claims was concealed when Ferrer requested it.

85.     Verge had no reason to hide any information from Ferrer, which is why, as Ferrer admits in its Complaint, Verge freely disclosed the information to Ferrer after Ferrer made its first request for the information.

86.     Verge did not intentionally conceal any material facts from Ferrer at any time.

87.     Before execution of the CDLA, Verge provided all documents and information that Ferrer requested, and Verge has continued to do so since then.

88.     Under no set of facts will Ferrer prove that Verge intentionally withheld or concealed any material information that Ferrer requested or that Verge was otherwise obligated or required by law to divulge.

## VII.     Ferrer owes all amounts due and payable under the CDLA.

89.     Ferrer materially breached the CDLA when it failed to make the Upfront Payment and to pay for its share of the Development Costs.

90. Ferrer's purported Recission Notice smacks of buyer's remorse and a short-sighted attempt to run away from the substantial monetary sum which it is obligated to pay.

91. On multiple occasions, Ferrer's key executives and others within the company acknowledged that Ferrer was in breach of the CDLA, while at the same time holding Verge hostage for the outstanding payments in an attempt to extract concessions from Verge about ██ ███████████—concessions which Ferrer was not entitled to under the CDLA and which the Data Monitoring Committee and other experts opposed.

92. Those required payments were not contingent upon any action by either party other than execution of the CDLA and Verge providing an invoice to Ferrer.

93. Those require payments were not contingent upon Verge accepting Ferrer's demands to stop the clinical trials.

94. Those payment obligations were satisfied, and they are contractually binding.

95. Ferrer's Rescission Notice amounts to a termination without cause pursuant to Section 17.2.2.1 of the CDLA.

96. Because Ferrer terminated the CDLA without cause and without providing the ninety (90) days' notice required under Section 17.2.2.1, all of Ferrer's payment obligations through May 31, 2024, and for the ninety (90) days thereafter remain due and owing.

97. In addition, all rights licensed to Ferrer automatically revert back to Verge pursuant to Section 17.3.3 of the CDLA.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

98. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

99.     Verge and Ferrer were parties to the CDLA.

100.    Verge has provided all services and complied with all obligations contemplated under the CDLA.

101.    The CDLA was an enforceable contract.

102.    Ferrer breached the CDLA by failing to make payments owed thereunder and by repudiating its obligations in reliance on a Rescission Notice not grounded in law or fact.

103.    Ferrer's breaches were material and, as a result, Verge has been harmed in an amount to be proven at trial.

**COUNT II**
**Declaratory Judgment**

104.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

105.    Ferrer's Rescission Notice is not grounded in law or fact, and its notice was ineffective, null, and void.

106.    Because Ferrer cannot prove that Verge intentionally withheld or concealed any material information, Verge seeks a declaration that Ferrer had no right to rescind the CDLA.

107.    Verge further seeks a declaration that the Rescission Notice constituted a termination without cause under Section 17.2.2.1 of the CDLA, that all of Ferrer's payment obligations through May 31, 2024, and for the ninety (90) days thereafter remain due and owing, and that all rights licensed to Ferrer automatically revert back to Verge.

**PRAYER FOR RELIEF**

WHEREFORE, Verge prays that the Court enter judgment in its favor and against Ferrer by:

a. Dismissing Ferrer's Complaint with prejudice and denying each request for relief made by Ferrer;

b. Declaring Ferrer had no basis to rescind the CDLA and that its Rescission Notice was ineffective, null, and void;

c. Declaring that all rights licensed to Ferrer automatically revert back to Verge;

d. Granting Verge judgment in its favor on its counterclaims and awarding it monetary damages plus interest;

e. Awarding Verge its attorneys' fees and cost of suit; and

f. Awarding Verge any and all other relief, at law or in equity, which the Court deems just and proper.

POLSINELLI PC

Dated: July 10, 2024

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (DE Bar No. 5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920

and

Joseph Hubbard (*Pro Hac Vice*)
501 Commerce Street, Suite 1300
Nashville, TN 37220
(615) 292-3940
joseph.hubbard@polsinelli.com

*Attorneys for Verge Analytics, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 17, 2024, upon the following in the manner indicated:

Bradley R. Aronstam                                            *BY ELECTRONIC MAIL*
Adam D. Gold
Thomas A. Barr
ROSS ARONSTAM & MORITZ LLP
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, DE  19801
Telephone:   (302) 576-1600
baronstam@ramllp.com
agold@ramllp.com
tbarr@ramllp.com

*Attorneys for Plaintiff Ferrer*
*Internacional S.A.*

Mark C. Goodman                                              *BY ELECTRONIC MAIL*
BAKER & MCKENZIE LLP
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone:   (415) 576-3000
mark.goodman@bakermckenzie.com

*Attorneys for Plaintiff Ferrer*
*Internacional S.A.*

  */s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)