IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FERRER INTERNACIONAL S.A., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-694 (RGA) |
| | ) | |
| VERGE ANALYTICS INC. d/b/a VERGE | ) | **PUBLIC VERSION** |
| GENOMICS, | ) | **FILED: February 24, 2026** |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OPENING
<u>DISCOVERY DISPUTE LETTER</u>**

*Of Counsel:*

Joseph Hubbard
Keelin M. Kraemer
POLSINELLI PC
501 Commerce Street, Suite 1300
Nashville, TN 37220
(615) 292-3940
joseph.hubbard@polsinelli.com
kkraemer@polsinelli.com

Daniel Hoelting
POLSINELLI PC
150 N. Riverside Plaza, Suite 300
Chicago, IL 60606
(312) 463-6308
dhoelting@polsinelli.com

February 18, 2026

POLSINELLI PC
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com

*Attorneys for Verge Analytics, Inc.*

The Honorable Richard G. Andrews
February 18, 2026
Page 1



Dear Judge Andrews,

I write in response to Ferrer Internacional S.A.'s February 12, 2026, letter seeking to compel Verge Analytics, Inc. to produce additional documents (D.I. 154). Ferrer's request should be denied. The documents Ferrer seeks have no relevance to either parties' claims or defenses, all of which arise from events that occurred *before* the parties executed the Co-Development and License Agreement ("**CDLA**") on March 18, 2024 or, at the latest, *by* May 31, 2024—the date Ferrer rescinded the CDLA and terminated all of its obligations to Verge. Putting aside the fact that Ferrer wants documents that lack relevance and are not proportional to the needs of the case, Verge has already produced documents that reflect the information Ferrer claims it needs, and no additional document production will assist the parties, the Court, or the jury to illuminate any material facts.

Verge's productions total more than 475,000 pages and were premised entirely on agreements reached between the parties. Although Verge objected to producing documents after Ferrer's rescission,[1] Verge agreed during a meet-and-confer on August 4, 2025, to produce certain communications through July 13, 2024—30 days after Ferrer filed this lawsuit—to avoid unnecessary motion practice. Verge also agreed to produce other limited categories of documents and communications identified by Ferrer, including some on a going-forward basis. Nearly all those documents were produced on September 5, 2025, and a few other documents were produced pursuant to that agreement in November and December.

Now, more than six months later, Ferrer proposes to expand discovery and seeks additional documents through the present. Its request would encompass internal and external communications to the extent they were created, sent, or received *after* July 13, 2024, notwithstanding what Verge already produced through December of 2025. Its request would require Verge to collect and review documents created as late as (1) two years after the alleged nondisclosure that is at the core of Ferrer's claims; (2) twenty months since Ferrer's rescission; and (3) more than a year and a half after Ferrer filed this litigation.

Ferrer's characterization of what it expects to discover through a new production does not reflect reality. Ferrer has either failed to review, misread, or misunderstood documents previously produced, and it has apparently forgotten or overlooked testimony it obtained in this case. Whatever the cause, its misapprehension does not provide a basis for additional discovery. Those already-produced documents currently in Ferrer's possession undercut its argument as to why additional documents are needed and provide the information which Ferrer baselessly speculates about in its letter: the reason Verge decided in July of 2025[2] not to continue with any additional clinical trials for VRG50635. Specifically, after a full readout of the data from the study in Europe and Canada, Verge decided, in consultation with the independent Data Monitoring Committee and others, that there was insufficient evidence of efficacy to justify further clinical trials. Documents bearing on that decision were produced to Ferrer as part of the August 4 agreement. Ferrer also deposed Diego Cadavid, who testified repeatedly that Verge reviewed the study results and

---

[1] Among other reasons, Verge objected to producing documents dated after May 31, 2024, because Ferrer had terminated the relationship and rescinded the CDLA as of that date. Verge believed and continues to believe that any post-rescission documents are not relevant, lack any nexus to the claims and defenses in this case, and are not proportional to the needs of this case.

[2] Ferrer wrongly claims in its letter that Verge made that decision in the fall of 2025 even though it has documents in its possession and testimony showing the decision was made months earlier.

The Honorable Richard G. Andrews
February 18, 2026
Page 2



determined there was a lack of efficacy. Contrary to Ferrer's conjecture, Verge's decision had no connection to any purported action or inaction by the Food & Drug Administration ("**FDA**").[3]

The documents that Ferrer seeks are not relevant or proportional to the needs of the case and would be duplicative of information and documents Ferrer already obtained in discovery. The Court should deny the Motion.

**Statement of Facts:**  Ferrer filed this lawsuit on June 13, 2024. The original Complaint contained a single claim for rescission based on Ferrer's allegations that Verge had misrepresented and concealed information to induce Ferrer to enter into the CDLA. In November of 2025, the Court permitted Ferrer to amend its Complaint to add a claim for damages premised on fraud, and that claim relies on the same operative facts. Specifically, Ferrer alleges that Verge did not disclose certain communications from FDA dated January 19, 2024, and February 16, 2024, before the parties signed the CDLA on March 18, 2024.

In those communications, FDA approved Verge to proceed with its Investigational New Drug Application 166524 for VRG50635 and to conduct Verge's proposed study, VGCS-50635-003, in the United States involving clinical trials in healthy adult volunteers of up to fourteen (14) day dosing duration. FDA also notified Verge of a partial clinical hold to the extent that Verge could not proceed with clinical trials in humans dosing beyond fourteen (14) days in the United States—studies which Verge had not requested to perform—pending submission of additional information requested by FDA. The FDA's partial clinical hold was confined to the United States and was not directed at Verge's long-term study occurring in Canada and Europe, over which FDA had no jurisdiction and which involved ALS patients (not healthy volunteers).

Ferrer did not request all regulatory communications or documents, including FDA communications, before entering into the CDLA—a fact Ferrer admitted in this litigation. The study in the United States also did not fall within the "Territory" for which Ferrer was negotiating for rights in the CDLA. Nevertheless, Ferrer now maintains that the partial clinical hold was material information which Verge was obligated to disclose. Although Ferrer mentions other events that occurred between the signing of the CDLA and its rescission on May 31, 2024, Ferrer relies only on Verge's alleged nondisclosure of the FDA communications as the basis for its claims. Likewise, January and February of 2024 represent the operative time period for the claims and defenses raised in this action. The determination of what Verge was or was not required to disclose during those months will resolve all claims.[4]

During the summer of 2025, counsel for the parties met and conferred on Verge's objection to producing post-rescission documents, culminating with a meeting between counsel on August 4. As mentioned above, Verge ultimately agreed to produce certain communications through July 13, 2024. Verge also agreed to produce documents limited to specific categories identified by

---

[3] FDA lifted its full clinical hold in the United States to a partial clinical hold *after* Verge made its no-go decision, and a letter reflecting FDA's decision was produced to Ferrer as VERGE0386133.

[4] Ferrer suggests that Verge's claims implicate some period after the signing of the CDLA or Ferrer's rescission, but that is not the case. If Ferrer had no basis for rescission, then it breached Section 9 of the CDLA when it failed to make a required lump sum payment of Fifteen Million Euro and failed to pay Verge thirty percent (30%) of the Development Costs already incurred by Verge within 30 business days of the CDLA's signing. Ferrer admits it did not make either of those payments, so no additional production from Verge is needed to establish these claims.



Ferrer, consisting of correspondence to and from regulators (including the FDA), materials from meetings of the Data Monitoring Committee (including minutes and recommendation letters), and reports Verge sent to regulators reflecting any safety events from the clinical trials. To the extent any additional correspondence was exchanged with regulators, Verge agreed to supplement with those documents on a going-forward basis.

Those documents have been produced, but Ferrer makes little mention of them in its letter and does not attempt to show how they support a need for more document production. Ferrer's failure to attach *any* post-rescission document as an exhibit to its motion is also conspicuous and revealing. Ferrer has not pointed to any post-rescission document that demonstrates a need for further discovery of material facts, nor has it attempted to rely at any time on the post-rescission documents for either of its claims, even though it has had those documents for months.

**Argument:** Ferrer has not shown the potential relevance of any new production to this dispute. The party seeking discovery bears the initial burden of demonstrating that the requested information is relevant to the claims, defenses, or the subject matter of the litigation. *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009). "[T]he scope of [ ] discovery is not without limits." *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996). As such, "[d]iscovery should be tailored to the issues involved in the particular case." *Id.* In ascertaining which materials are discoverable and which are not, a district court must further distinguish between requests that "appear[ ] reasonably calculated to lead to the discovery of admissible evidence," *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 191 (D.N.J. 2010), and demands that are "overly broad and unduly burdensome." *Miller v. Hygrade Food Products Corp.*, 89 F.Supp.2d 643, 657 (E.D. Pa. 2000).

Ferrer claims that it "must be allowed to challenge" whether "the decision to terminate the trials was due to efficacy issues and not safety concerns." (D.I. 154 at 2). Ferrer claims it needs additional documents to scrutinize decisions made by Verge in the 20 months since Ferrer rescinded the CDLA, but Ferrer offers no explanation for why those decisions have evidentiary value for the key question at issue in this litigation: whether Verge withheld material information *before* the CDLA was signed. There is also no basis to conclude that documents dated many months, if not years, after the operative time period will reveal Verge's intent or motive from January and February of 2024, and Ferrer has not identified any document to support that theory.

The documents Ferrer seeks will result in unnecessary litigation expense and will further delay resolution of this action by requiring a lengthy collection, review, and production process that will likely impair the timely scheduling and completion of depositions. Ferrer does not explain why more documents are needed other than to assuage its speculation that is, in fact, undermined by documents already in its possession. Even if Verge's studies had ended exclusively due to safety concerns as Ferrer speculates (which they did not and which Ferrer already knows), or if they had the opposite outcome and had led to the worldwide development of VRG50635 as a cure for ALS, those facts would not establish one way or the other the materiality of the pre-execution FDA communications on which Ferrer relies for its claims. Likewise, communications about the 2025 readout of data from a clinical trial taking place in Canada and Europe or more details on Verge's no-go decision would not establish whether FDA's regulatory action in January and February of 2024 in the United States was material to Ferrer, nor would they establish Verge's intent or motive. Only Ferrer can subjectively explain why FDA's communications would have mattered to it before March of 2024 despite having failed to request them during due diligence. For all these reasons, Ferrer's Motion should be denied.

The Honorable Richard G. Andrews
February 18, 2026
Page 4



Sincerely,

*/s/ Stephen J. Kraftschik*

Stephen J. Kraftschik (#5623)

cc:  All Counsel of Record (via e-mail)